UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERESA BOWEN,

       Plaintiff,                        Civil Action No. 13-14974

v.                                  HON.  SEAN F. COX
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Teresa Bowen ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

**PROCEDURAL HISTORY**

      On October 13, 2010, Plaintiff filed an application for DIB, alleging disability as of February 11, 2005 (Tr. 108-114).   After the initial denial of benefits, Plaintiff requested an

administrative hearing, held on January 3, 2012 in Livonia, Michigan before Administrative Law Judge ("ALJ") Henry Perez (Tr. 35). Plaintiff, unrepresented at the time of hearing, testified (39-60), as did Vocational Expert ("VE") Melody Henry (Tr. 61-67). On April 27, 2012, ALJ Perez found Plaintiff not disabled (Tr. 29-30). On October 9, 2013, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on December 6, 2013. *Docket #1*.

## BACKGROUND FACTS

Plaintiff, born May 18, 1964, was just short of her 48th birthday when the ALJ issued his decision (Tr. 30, 108). She completed two years of college and worked previously as an assembly line worker, cook, pantry worker, and trainer (Tr. 141). She alleges disability as a result of "lumps" on her head, back problems, a pinched cervical spine nerve, mental health problems, and growths on her throat and kidney (Tr. 140).

### A.    Plaintiff's Testimony

 *Plaintiff, unrepresented at the hearing, declined the ALJ's offer for additional time to find an attorney* (Tr. 37-38).

Plaintiff then offered the following testimony:

Plaintiff lived with a friend in Pontiac, Michigan (Tr. 39). She stood 5' 8" and weighed 260 pounds (Tr. 40). She was single with one adult child (Tr. 40). She did not drive due to lower extremity numbness (Tr. 41). In addition to a high school education, Plaintiff received a certificate in food service and later, received training to become a

security guard (Tr. 41).  In the past 15 years, Plaintiff worked as a cook (Tr. 42-43).  The position required her to lift up to 200 pounds and walk up to 20 miles a day (Tr. 43).  Before working as a cook, she spent a year doing job training at a correctional institution (Tr. 44).  She failed to pass the "agility" examination for corrections work (Tr. 44).  Before the corrections training, she was an assembly worker at a canning factory (Tr. 44).

In May, 2004, Plaintiff slipped and fell on a wet floor at work (Tr. 46).  Over the next few months, her condition became progressively worse until January, 2005 when she was unable to walk (Tr. 46).  She received medication for the back condition (Tr. 47-49). The pain medication caused the side effect of sleepiness (Tr. 49-50).  She was unable to afford physical therapy and steroid injections recommended by the treating sources (Tr. 50).  She was unable to support herself and moved to a homeless shelter in February, 2006 (Tr. 51).

She began psychological counseling in September, 2011 through a community resource and was assigned a social worker (Tr. 52-53).  She had been diagnosed with severe depression and was currently taking an antidepressant and mood stabilizer (Tr. 54).

On a typical day, she arose, made coffee, then washed dishes and performed other chores at a slow pace (Tr. 55).  She washed her own clothes but did not vacuum (Tr. 56).  She was able to shop for groceries (Tr. 56).  She spent the rest of her day watching television, reading the Bible, and talking to her sister (Tr. 56).  She did not visit family or friends (Tr. 57).

Plaintiff was unable to stand for more than 15 minutes or sit for more than 45 (Tr. 57-

58).   Although her accident initially affected her right side, she now experienced low extremity pain and numbness on both sides (Tr. 58).   She was unable to walk more than 10 to 12 feet (Tr. 59).   She was unable to lift more than five pounds (Tr. 59).   She coped with pain by taking medication, hot showers, and placing a pillow between her knees while sleeping (Tr. 60).   She denied current hobbies (Tr. 61).

### B.   Medical Evidence

#### 1.  Treating Sources

In February, 2005, Plaintiff sought emergency treatment for back pain, noting that she was obtaining good results from over-the-counter medication (Tr. 233-234).   She was advised to perform low back exercises (Tr. 233).   In April, 2005, she sought emergency treatment for right back and hip pain (Tr. 210).   Plaintiff indicated that her condition had not worsened recently; rather, she was "just tired of living" with the back pain and requested prescription medication (Tr. 210).   She was diagnosed with "acute right sciatica" (Tr. 211). She exhibited normal muscle strength and did not show signs of neurological impairment (Tr. 211).   She was prescribed Naprosyn and Valium before being released (Tr. 211).   In May, 2005, J. Steven Schultz, M.D. performed an examination of the lower back, recommending a course of physical therapy and Ibuprofen 800, Flexeril, and Ultram (Tr. 236).

A February, 2006 MRI of the lumbosacral spine showed disc bulging at T11-12 affecting the spinal cord and a herniation at L4-5 causing stenosis (Tr. 220, 266).   The following month, neurologist Rodney A. Hayward, M.D. reviewed the MRI, recommending

-4-

a neurosurgical evaluation and EMG studies (Tr. 228, 242, 257).   The same month, Phillip A. Scott, M.D. noted the absence of cord compression (Tr. 238).   EMG and nerve conduction studies of the right lower extremity were unremarkable (Tr. 245-246).   Plaintiff, now living in a shelter, was given functional restrictions of being "allowed to lie down when needed" (Tr. 263-264).   In June, 2006, Dr. Schultz recommended physical therapy for the back condition (Tr. 253).   February, 2010 x-rays of the sacroiliac joints were unremarkable (Tr. 295).   The following month, Plaintiff sought emergency treatment for back pain (Tr. 297-303).   An x-ray of the lumbar spine showed degenerative changes at L4-5 (Tr. 302).

Psychological intake records created in September, 2011 show that psychiatrist William McAllister, M.D. diagnosed Plaintiff with bipolar disorder, assigning her a GAF of 40[1] (Tr. 330, 335).   In January, 2012, Plaintiff sought emergency treatment after experiencing an exacerbation of low back pain (Tr. 340).   Upon examination, she appeared alert and was able to follow simple commands (Tr. 350).    She presented as "appropriate, calm, [and] cooperative" (Tr. 366).   She was prescribed Dilaudid and Vicodin (Tr. 341).   A February, 2012 MRI of the lumbar spine showed "mild to moderate degenerative disease and disc space narrowing" at L4-5 (Tr. 374-375).

---

[1]

A GAF score of 31–40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *DSM–IV–TR* at 34.

## 2. Non-treating Sources

In January, 2011, psychologist James E. Crowder performed a consultative psychological examination, noting Plaintiff's history of work as a pantry chef (Tr. 304). Plaintiff, living with a friend, reported that she used only over-the-counter medication for back pain (Tr. 305). She indicated that she had a valid driver's license and was able to drive and shop for groceries (Tr. 305). Dr. Crowder observed no pain behavior or extremity limitations (Tr. 305). She exhibited clear speech and was fully oriented (Tr. 305). Plaintiff reported that she had friends but did not attend church (Tr. 305). Dr. Crowder noted that Plaintiff's memory was intact (Tr. 306). He diagnosed her with mild depression, assigning her a GAF of 65[2] (Tr. 306). Dr. Crowder found that Plaintiff had "a slight limitation in her ability to relate to others, moderate constriction of interests, and no restriction of daily activities . . ." (Tr. 306). He found that she had "good ability to understand, carry out, and remember simple instructions, and fair to good ability to respond appropriately to supervisors, coworkers, and work pressures in a work setting" (Tr. 306).

The same month, Patricia Lorena Auxier, M.D. performed a consultative physical examination, noting a limited range of dorso-lumbar motion due to pain (Tr. 310). She observed that Plaintiff walked with a slight limp but did not require an assistive device (Tr.

---

[2]GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders,* 34 ("*DSM–IV–TR*") (4th ed.2000)

310).  Plaintiff exhibited full grip strength, full lower extremity strength, and the absence of

muscle atrophy (Tr. 310-311).   Dr. Auxier noted that Plaintiff was unable to squat due to

back pain (Tr. 311).  The following month, Robert Estock, M.D. performed a non-examining

Psychiatric Review Technique on behalf of the SSA, finding that Plaintiff's symptoms of an

affective disorder (depression) were non-severe (Tr. 314).  Under the "'B' Criteria," he found

that Plaintiff's mental restrictions were uniformly "mild" (Tr. 324).  Citing Dr. Crowder's

observations, Dr. Estock concluded that Plaintiff was able to manage her own funds and

could "understand, carry out, and remember simple instructions" (Tr. 326).

## C.    Vocational Expert Testimony

VE Melody Henry classified Plaintiff's former work as an assembly line worker as

unskilled and exertionally medium; cook, skilled/medium (very heavy as performed); pantry

worker, semiskilled/light (very heavy as performed); and training for correctional facility

work, semiskilled/light (unskilled as performed) [3] (Tr.62-63).  The VE found that Plaintiff's

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;
*light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds;" *medium* as "lifting no more than 50 pounds at a
time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that
exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent
lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting
objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects
weighing 50 pounds or more. § 404.1567(e).

job skills from the job of cook were transferrable to cook positions at the light exertional

level and the exertionally light positions of short order cook and food prep worker (Tr. 63-

64). She testified that the pantry work would also be transferrable to the job of short order

cook (Tr. 63).

The ALJ then posed the following question to the VE, describing a hypothetical

individual of Plaintiff's age, education, and work background:

> [A]ssume that such a person has an exertional limitation of lifting 20 pounds
> occasionally, 10 pounds frequently. Sitting, standing, walking six hours. Jobs
> that would allow for routine production or stress and simple job assignments,
> putting this individual at the unskilled level. could such a person be able to
> perform claimant's past relevant work? (Tr. 64).

The VE replied that given the above limitations, the individual would be unable to

perform Plaintiff's past relevant work, but could perform the light, unskilled work of a

bench assembler (9,275 jobs in the metropolitan Detroit economy ); production inspector

(5,200); and records clerk (1,070). The VE found that if the same individual were limited

to sedentary work, she could perform the job of sorter/packer (1,025); visual inspector

(2,175); and visual surveillance monitor (1,065) (Tr. 65). The VE testified that if Plaintiff's

testimony regarding her exertional limitations were fully credited, she would be able to

perform the sedentary positions (Tr. 65-66). However, if Plaintiff's testimony regarding

sleepiness due to medication side effects were credited, she would be unable to perform any

work (Tr. 66). The VE concluded by stating that her testimony was consistent with the

information found in the Dictionary of Occupational Titles ("DOT") (Tr. 66).

-8-

### D.  The ALJ's Decision

Citing the medical records, ALJ Perez determined that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine, hypertension, and adjustment disorder" but that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 21-22).  He found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 22).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform unskilled, exertionally light work with the following limitations:

> [L]imited to lifting ten pounds frequently and twenty pounds occasionally; able to sit for six hours in an eight-hour workday; able to stand and/or walk for six hours in an eight-hour workday; limited to simple job assignments with routine production and stress (Tr. 24).

Adopting the VE's job numbers, the ALJ found that although Plaintiff was unable to perform any past relevant jobs, she could work as a bench assembler, inspector, or records clerk (Tr. 28-29).

The ALJ discounted Plaintiff allegations of physical limitations, citing consultative psychiatrist's observation that she did not experience problems walking (Tr. 27).  He noted that while Plaintiff testified that she was unable to walk more than 15 feet, she was able to shop for groceries, vacuum small spaces, and do her own laundry (Tr. 27).  The ALJ observed that despite Plaintiff's allegations of disabling physical and mental conditions, her treatment was limited to conservative, sporadic treatment (Tr. 27).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[4]

### A.  Listing 1.04

Plaintiff argues first that the ALJ erroneously identified her back condition as "degenerative disc disease," when in fact, she suffered from lumbar disc herniations. *Plaintiff's Brief*, 6, *Docket #8.*  She contends that the evidence showing that she walked with a limp and experienced difficulty squatting establishes that she meets Listing 1.04C.  *Id.*

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to

---

[4]Plaintiff does not contest the ALJ's findings regarding her psychological limitations.  Further, my own review of the transcript indicates that the ALJ's findings were well supported by the transcript.

benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

Plaintiff's argument that she is disabled under Listing 1.04C is not well taken. Listing 1.04C, pertaining to disorders of the spine, requires evidence showing "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture)" along with (C) "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, *and* resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

This argument should be rejected on multiple grounds. First, the ALJ's finding that Plaintiff experienced "degenerative disc disease" is supported by imaging studies confirming the presence of the condition (Tr. 302, 374-375). Second, Plaintiff's claim that the ALJ failed to acknowledge the condition of "disc herniation" is flatly contradicted by the ALJ's reference to that condition (Tr. 25). Third, Plaintiff's argument that the Step Three analysis was somehow tainted by the ALJ's mention of degenerative disc disease is defeated by the language of Listing 1.04 in which either "disc herniation" *or* "degenerative disc disease"

-12-

would satisfy the first prong of the Listing. *See above.*  Thus, even assuming that the ALJ

erred by finding the presence of degenerative disc disease and had not directly acknowledged

the disc herniations, it would not change the Step Three analysis.

Moreover, while Plaintiff cites evidence showing that she was observed walking with

a limp, this alone is not sufficient to show "ineffective ambulation" to meet Listing 1.04C.

"Ineffective ambulation" is defined as "generally as having insufficient lower extremity

functioning [ ] to permit independent ambulation without the use of a hand-held assistive

device(s) that limits the functioning of both upper extremities."  Section 1.00(B)(2).  None

of the treating or consultative examiners found that Plaintiff required the use of a cane or

walker.  Plaintiff did not testify that she needed an assistive device.  As noted by the ALJ,

none of the records suggested that Plaintiff required the use of a walking aid (Tr. 27).  The

ALJ cited April, 2005 records showing 5/5 strength in the lower extremities (Tr. 24).  The

ALJ acknowledged that Plaintiff exhibited a slight limp during the consultative examination

by Dr. Auxier (Tr. 26) but also cited March, 2006 treating records showing a normal gait (Tr.

25).  Plaintiff's failure to establish the need for any walking aid (much less a walking aid

requiring the use of both hands) defeats her argument that she meets Listing 1.04C.  As such,

remand on this basis is unwarranted.

## B. Credibility

Plaintiff disputes the basis of the ALJ's credibility determination, arguing that while

the ALJ noted that she was able to perform household activities, he did not acknowledge her

testimony that she performed the chores "at her own pace and rested between activities." *Plaintiff's Brief* at 6-7. She also argues that the ALJ erred by failing to articulate his reasons for discounting her claims of limitation. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [5]

Plaintiff's claim that the ALJ did not consider her alleged need to perform chores slowly is wholly incorrect. To the contrary, the ALJ noted that Plaintiff testified that "she

---

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-14-

could do chores at a slow pace with breaks in between" (Tr. 24 citing Tr. 55). More generally, the administrative opinion contains an accurate summary of Plaintiff's testimony (Tr. 24).

Likewise, the ALJ's reasons for discounting the claims of limitation are well articulated and supported. He noted that Plaintiff's professed inability to walk for more than 10 feet was contradicted by January, 2011 consultative records indicating that she had no functional limitation (Tr. 27 citing 305). The ALJ observed that Plaintiff's claims of walking limitations stood at odds with her ability to perform laundry chores and shop for groceries (Tr. 27 citing 56). He noted that Plaintiff did not allege the need for a motorized wheelchair or any assistive device while shopping (Tr. 27). Plaintiff's testimony that she was unable to drive (Tr. 41) contradicts her January, 2011 statements to Dr. Crowder that she continued to drive and shop independently (Tr. 305). The ALJ noted that Plaintiff's claims of lower extremity numbness stood at odds with an unremarkable EMG study (Tr. 25 citing Tr. 245-246).

The ALJ also found that Plaintiff's claims were undermined by her failure to seek more aggressive treatment (Tr. 27). I note that during the period Plaintiff experienced acute financial and housing problems, she nonetheless had access to quality health care (Tr. 220, 228, 236, 238, 245, 253). As such, her failure to obtain followup treatment does not appear to be attributable to financial hardship. The treating and consultative records show that while Plaintiff experienced some degree of limitation as a result of back problems, the condition

-15-

was not inconsistent with the ability to perform a limited range of light work (Tr. 23-25).

Finally, Plaintiff notes that the inclusion of all of her professed exertional and non-exertional limitation in the question to the VE would have resulted in a finding that she was incapable of all work. *Plaintiff's Brief* at 7.   She is correct that vocational testimony given in response to an "incomplete" hypothetical question   does not constitute substantial evidence.  *See Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir.2004). However, as thoroughly discussed by the ALJ, Plaintiff's professed degree of limitation was largely unsupported by the medical transcript.  Thus, he did not err in omitting Plaintiff's unsubstantiated limitations from the hypothetical question forming the basis of the RFC (Tr. 23-24, 64).  *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE).

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's physical or psychological limitations or her previous housing problems. Nonetheless, the finding that she is capable of a limited range of light work is supported by substantial evidence.  Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, and should not be disturbed by this Court   *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary

-16-

Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen_____
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: September 30, 2014

-17-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen